IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARRON L. NOLLEY                                    CV. 08-6277-PK

        Plaintiff,                                    FINDINGS AND
                                                         RECOMMENDATION


v.


MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

        Defendant.
_____

PAPAK, Magistrate Judge:

Plaintiff Sharron Nolley challenges the Commissioner's decision denying her application

for disability insurance benefits under Title II of the Social Security Act.  The court has

jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, the Commissioner's

decision should be reversed and remanded for further proceedings.

**BACKGROUND**

Sharron Nolley was born in 1956.  (Tr. 24.)  She completed the eleventh grade but did not

graduate and receive a high school diploma, nor did she obtain the General Educational

Page 1 - FINDINGS AND RECOMMENDATION

Development (GED) equivalent. *Id.* at 24-25. Nolley's work history consists of a variety of jobs, including, most recently, a part-time job at a flower shop, a part-time job as a sales clerk at Fred Meyer and work at a pharmacy and at a health food store. *Id.* at 97, 116-117, 120-122. She last worked from July 2005 until December 2005. *Id.* at 83, 110.

Nolley filed her current application for disability benefits in February 2006, alleging June 15, 2000 as her onset date. *Id.* at 81-85. After the Commissioner of Social Security denied her application initially and upon reconsideration, Nolley requested a hearing before an administrative law judge (ALJ). *Id.* at 56, 65, 68. The ALJ held a hearing in December 2007 and took testimony from Nolley, who was represented by an attorney, and from a vocational expert. *Id.* at 22-53. In February 2008, the ALJ issued a decision finding Nolley not disabled because she could perform the requirements of representative occupations such as an order clerk, sorter, laminating machine operator, bakery worker and officer helper. *Id.* at 17-18.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Id.* at 10-17. At step one, the ALJ found that Nolley had not engaged in substantial gainful activity since July 20, 2001. *Id.* at 11.[1] At step two, the ALJ found that Nolley suffered from the following severe impairments: degenerative disc disease of the cervical spine, fibromyalgia and headaches. *Id.* At step three, the ALJ found that Nolley's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* at 12. At step four, the ALJ found that Nolley was not able to perform her past relevant work. *Id.* at 16. The ALJ concluded at step five, however, that Nolley could perform other jobs that

---

1  Nolley filed an earlier application for benefits, which was denied on reconsideration on July 19, 2001. (Tr. 9.) The ALJ did not reopen the earlier application and instead found that July 20, 2001 was the earliest date relevant to Nolley's current application for benefits. *Id.* Nolley does not dispute this finding.

exist in significant numbers, and accordingly concluded that she was not disabled. *Id.* at 16-17.

After the Appeals Council denied review, *id.* at 1, Nolley filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

Nolley contends the ALJ erred in several respects. Specifically, Nolley argues that the ALJ improperly discounted the opinion of her treating physician. Nolley further asserts that the ALJ improperly rejected her testimony and failed to account for lay witness testimony. Finally,

Nolley argues that these errors affected the ALJ's step five determination that she was capable of performing other jobs.

## I.    Physician Opinion

Nolley argues that the ALJ erred when he rejected the opinion of her treating physician. In the face of conflicting medical evidence, the ALJ must determine credibility and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956-957 (9th Cir. 2002) (citation omitted). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships." *Carmickle*, 533 F.3d at 1164. In addition, several factors determine the weight the ALJ should give to a physician opinion, including the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole and the physician's area of specialty. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)).

An ALJ may reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons" supported by substantial evidence in the record. *Carmickle*, 533 F.3d at 1164. If other evidence in the record contradicts the opinion, an ALJ may reject the opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

Here, the ALJ's residual functional capacity determination rejected the opinion of Nolley's treating physician, Dr. Landauer, that Nolley was unable to perform work at the light or sedentary level. (Tr. 345-346.) Doctor Landauer's opinion is inconsistent with the opinion of the

state agency reviewing physician, who indicated that Nolley had the physical capacity to perform medium-level work. *Id.* at 300-301. Thus, I review the ALJ's decision to determine whether he set forth specific and legitimate reasons to reject Dr. Landauer's opinion and whether substantial evidence supports those reasons. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066-1067 (9th Cir. 2006) (a nonexamining physician opinion sufficed to establish a conflict among the medical opinions, although it did not by itself constitute substantial evidence to justify the rejection of a treating physician opinion).

An ALJ may properly discount a physician opinion based on discrepancies between the opinion and the physician's treatment notes. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting doctor's opinion that contradicted the doctor's treatment notes, and the doctor's other recorded observations and opinions regarding the claimant's capabilities); *see also Carmickle,* 533 F.3d at 1165 (ALJ properly rejected physician opinion that claimant could not tolerate light or sedentary work when, two months later, the physician released the claimant to full-time work); *Tommasetti*, 533 F.3d at 1041 (ALJ properly rejected physician opinion based on the "incongruity" between the physician's questionnaire responses and the medical records); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (rejecting treating doctor's opinion on claimant's limitations where treatment notes did not indicate reasons for limitations nor did they indicate that the doctor ever recommended such limitations); *Thomas*, 278 F.3d at 957 (rejecting treating doctor's statement that claimant was unable to work where doctor indicated in treatment notes that claimant could work).

Here, the ALJ cited several grounds supporting his decision to reject Dr. Landauer's opinion that Nolley was incapable of work at the light or sedentary level. The ALJ found that

Page 5 - FINDINGS AND RECOMMENDATION

Dr. Landauer's opinion was inconsistent with her treatment records because, for many visits, Dr. Landauer's treatment notes did not mention Nolley's fibromyalgia symptoms or neck pain. The ALJ also noted that Dr. Landauer reported that Nolley had degenerative disc disease with chronic back and neck pain but the record contained no diagnosis of degenerative disc disease of the back. Finally, the ALJ indicated that the basis for Dr. Landauer's opinion was unclear in light of the fact that Nolley performed non-sedentary jobs while under Dr. Landauer's care.

Substantial evidence in the record supports the ALJ's finding that Dr. Landauer's opinion was inconsistent with her treatment records. As discussed more fully below, Nolley did not consistently seek treatment for her symptoms related to fibromyalgia, degenerative disc disease or headaches, and Dr. Landauer's treatment records reflect that. Moreover, at several points, including ten days after she wrote her opinion that Nolley could not perform light or sedentary work, Dr. Landauer's treatment notes indicate that Nolley's pain or fibromyalgia was stable or improving. (Tr. 349, 352, 362-363, 367-368, 392.)

The ALJ also correctly noted that, although Dr. Landauer reported that Nolley had degenerative disc disease with chronic back and neck pain, the record contained no diagnosis of degenerative disc disease of the back. Nolley's degenerative disc disease involved her cervical spine. *Id.* at 238, 359. In addition, Landauer's treatment records only mention back pain twice, once during Nolley's first visit to Landauer when she reported that her chronic back pain was stable and once in 2004, when Nolley reported "some back pain." *Id.* at 366-367.

The record also supports the ALJ's finding that Dr. Landauer did not provide a clear basis for her opinion that Nolley could not perform light or sedentary work. Light work involves lifting no more than 20 pounds, frequent lifting of up to 10 pounds, and "a good deal of walking

Page 6 - FINDINGS AND RECOMMENDATION

or standing." 20 C.F.R.. § 404.1567. Sedentary work involves lifting no more than 10 pounds at a time, occasional lifting or carrying small articles, and occasional walking or standing. *Id.* While under Dr. Landauer's care, Nolley worked at a flower shop, which required that she walk or stand for an entire shift, and at Fred Meyer, which required that she walk or stand for five hours, lift up to 60 pounds, and frequently lift twenty-five pounds. *Id.* at 116-117, 120. In January 2005, Landauer indicated that Nolley could return to work without difficulty following a shoulder injury. *Id.* at 14, 362. Moreover, in November 2005, Landauer gave Nolley a steroid injection for elbow pain brought on by Nolley's work at the flower shop but did not advise her to stop working then or at any other point. *Id.* at 358-359. Instead, she stated that Nolley "may be able to stop working" and advised her to keep a journal of her activities. *Id.* at 363. The ALJ rationally concluded from this record that Dr. Landauer lacked support for her opinion that Nolley was incapable of work at the light or sedentary level.

The ALJ cited specific and legitimate reasons to discount Dr. Landauer's opinion. Substantial evidence in the record supports those reasons. Accordingly, I conclude that the ALJ properly discounted Dr. Landauer's opinion.

## II.    Claimant Credibility

The ALJ found that Nolley's account of her symptoms was not fully credible. Nolley reported that she could walk a half hour to an hour before needing rest and later testified she could walk for only ten minutes. *Id.* at 30, 138. She further reported that she required naps two times per day due to fatigue and testified that she had to lay down three to four times per day to ease her pain. *Id.* at 32-33, 35-36, 139. She also reported that she could lift only ten pounds occasionally. *Id.* at 141. She further testified that, at least three times per month, she had severe

headaches that lasted an entire day and forced her to lay down.  *Id.* at 36-37.  The ALJ rejected

this testimony when he found that Nolley could stand, walk or sit for six hours in an eight hour

workday and could lift ten pounds frequently and twenty pounds occasionally.  *Id.* at 12.  Nolley

argues that the ALJ erred when he discounted her testimony.

Once a claimant produces medical evidence of an underlying impairment, an ALJ may

not reject the claimant's subjective complaints based solely on a lack of medical evidence to fully

corroborate the alleged severity of pain.  *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 883 (9th Cir.

2006); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).  Unless the record has affirmative

evidence of malingering, the ALJ must offer specific, clear and convincing reasons for rejecting

the claimant's testimony about the severity of her symptoms.  *Carmickle v. Comm'r Soc. Sec.

Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must state specifically the facts in the

record that support the credibility determination.  *Holohan v. Massanari*, 246 F.3d 1195, 1208

(9th Cir. 2001).

Here, when the ALJ found that Nolley's degenerative disc disease of the cervical spine,

fibromyalgia and headaches were severe, he necessarily concluded that Nolley had produced

medical evidence of those impairments.  *See* SSR 96-4, 1996 SSR LEXIS 11, at *3 (July 2,

1996) ("[U]nder no circumstances may the existence of an impairment be established on the

basis of symptoms alone."); *see also Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005).

In addition, the ALJ did not find that Nolley was malingering, nor do I find affirmative evidence

of malingering.  Thus, the ALJ required "clear and convincing" reasons to reject Nolley's

symptom testimony.

### A.    Frequency and Nature of Treatment

The ALJ discounted Nolley's stestimony in part because Nolley had not consistently pursued treatment for symptoms related to fibromyalgia, degenerative disc disease of the cervical spine or headaches and the medical record did not indicate that her symptoms were severe.  (Tr. 16.)  An ALJ may consider the claimant's treatment regime as a basis for finding a complaint unjustified or exaggerated.  *See Tommasetti*, 533 F.3d at 1039 (ALJ properly inferred that claimant's pain was not as disabling as he reported because he did not seek an alternative treatment program after he stopped taking an effective medication due to mild side effects); *Parra v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007) (ALJ did not err when he discounted claimant's pain testimony in part because the claimant relied on over-the-counter pain medication); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ  properly discounted the claimant's back pain testimony when claimant did not have any treatment for three months and the existing treatment did not include surgery, chiropractic care or physical therapy).  Thus, the ALJ properly discounted Nolley's symptom testimony if the record demonstrates that she did not consistently pursue treatment for her impairments.

Because Nolley visited the doctor for a variety of reasons, the ALJ's determination that Nolley did not consistently seek treatment for her impairments required familiarity with the symptoms of those impairments.  The symptoms of fibromyalgia include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance."  *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).  Degenerative disc disease of the cervical spine involves the vertebrae in the neck, can produce pain in the neck, upper limbs and shoulders and may entail nerve root involvement.  Michael B Furman, et al.,

*Cervical Disc Disease*, WebMD *at*: http://emedicine.medscape.com/article/305720-overview
(last modified Apr. 6, 2009).

The record reflects long periods where Nolley did not seek medical treatment related to
her fibromyalgia, degenerative disc disease of the cervical spine and headache impairments.
From the start of the adjudicatory period in July 2001 until May 2002, no medical records
mention Nolley's impairments.  In May and June 2002, Nolley reported that she had chronic head
and neck pain. (Tr. 217, 224.)  In an October 2003 visit to establish care with Dr. Landauer, who
became her treating physician, Nolley reported that, most of the time, she did not notice her
chronic pain.  *Id.* at 367-368.  Nolley did not seek treatment for musculoskeletal pain again until
June and July 2004, two years after her previous report.  *Id.* at 365-366.  Moreover, although
Nolley visited Dr. Landauer for abdominal pain, the treatment records attribute that pain to
causes other than her fibromyalgia and show that it later resolved.  *Id.* at 364-365, 367.  Nolley
sought treatment for a shoulder injury in December 2004.  *Id.* at 362-363.  Dr. Landauer
diagnosed her with brachial plexopathy, a nerve injury, but did not mention degenerative disc
disease.  *Id.*  Dr. Landauer further indicated that Nolley's fibromyalgia was stable and "under
fairly good control" at that time.  *Id.*

From late 2005 through 2007, although Nolley more frequently sought treatment for her
impairments, she often went several months without seeking any treatment.  Nolley's neck and
arm pain prompted a trip to the hospital, several office visits, and physical therapy in May
through July 2005.  *Id.* at 237-239, 243, 359-360.  However, after a visit for elbow pain in
November 2005, Nolley did not complain of pain again until nine months later, in April 2006.
*Id.* at 351, 355-359.  From June through December 2006, Nolley made numerous office visits

Page 10 - FINDINGS AND RECOMMENDATION

related to fibromyalgia, muscle aches and hip pain. *Id.* at 349-350, 352-354, 389-391. Nolley, however, did not return to her doctor again until August 2007, despite having reported in December 2006 that she could not tolerate the higher dose of the prescription medication that had been effective in managing her pain. *Id.* at 389, 406-408.

In summary, the ALJ could rationally conclude from Nolley's treatment history that the medical evidence did not show persisting or severe symptoms because Nolley sought treatment only sporadically. I therefore conclude that the ALJ did not err in relying on that treatment history to discount her symptom testimony.

### B. Medical Evidence

Although an ALJ may not reject a claimant's symptom testimony based solely on a lack of objective medical evidence, an ALJ may consider the medical evidence as one of many factors relevant to determining the severity of the claimant's pain and its disabling effects. *Burch*, 400 F.3d at 681 (ALJ's partial rejection of the claimant's back pain testimony properly relied in part on MRI and x-ray results showing only mild degenerative disc disease and mild dextroscoliosis); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ's credibility determination properly relied in part on doctor's statement that claimant had no restrictions on activity and on a Global Assessment of Function level that indicated only mild symptoms).

Here, Nolley argues that the ALJ improperly relied on the objective medical evidence in assessing the credibility of her pain testimony. First, she argues that the ALJ relied on a lack of neurological evidence when her impairments do not involve a neurological component. Second, she contends that the ALJ required objective medical evidence of her fibromyalgia when the disease defies such measurement.

Page 11 - FINDINGS AND RECOMMENDATION

The ALJ reviewed all the medical evidence and, as part of that review, accurately referred to a neurologist's conclusion that Nolley did not have a significant neurological impairment. (Tr. 13, 230.) In addition, the ALJ correctly noted that an x-ray of Nolley's cervical spine showed "mild degenerative arthritis and minimal narrowing of the disc space" with a resulting diagnosis of cervical radiculopathy, which is a pathological condition of the nerve roots. *Id*. at 14, 244-245. The ALJ, however, nonetheless found that Nolley's fibromyalgia, degenerative disc disease and headaches were severe impairments. *Id*. at 11, Thus, rather than require objective or neurological evidence of fibromyalgia and degenerative disc disease, the ALJ found that the medical evidence established that Nolley met the diagnostic criteria.

The ALJ concluded that the medical evidence did not document persisting or severe symptoms. *Id*. at 16. As discussed above, Nolley's treatment history supports that conclusion. Moreover, the ALJ could properly conclude from the neurologist's opinion and the x-ray of Nolley's cervical spine that the symptoms of Nolley's degenerative disc disease were not as severe as she claimed. *See Burch*, 400 F.3d at 681. I therefore find the ALJ did not improperly rely on the medical evidence to discount Nolley's pain testimony.

### C.    Daily Activities

Nolley argues that the ALJ improperly relied on her work history to discount her testimony. A claimant's daily activities may support an adverse credibility finding where the "claimant engages in numerous daily activities involving skills that could be transferred to the workplace" or where the activities are inconsistent with claimant's alleged symptoms. *Orn*, 495 F.3d at 639. In addition, Social Security regulations provide that employment "during any period" of claimed disability may be probative of a claimant's ability to work. 20 C.F.R. §

Page 12 - FINDINGS AND RECOMMENDATION

404.1571.  The ALJ, however, should consider the claimant's ability to maintain employment over a period of time.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007) (ALJ erred in discounting the claimant's testimony on the basis that the claimant tried to work for nine weeks and failed).  Moreover, the ALJ cannot ignore evidence in the record in reaching the conclusion that the claimant's activities undermine her accounts of disabling pain.  *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (ALJ erred in finding that the claimant's activities undermined her pain testimony by not fully accounting for all parts of the testimony and reports).

## 1.    Employment Activities

The ALJ relied on Nolley's work history as an additional reason to discount her testimony.  The ALJ opinion, however is not entirely clear regarding how he analyzed her work activity.  In one part of the opinion, the ALJ recognized that Nolley's earnings did not amount to substantial gainful activity but found that Nolley's work activity suggested that she had the capacity to work full time.  (Tr. 11.)  The portion of the ALJ opinion that explains his credibility finding, however, states that he discounted Nolley's testimony in part because she "managed full time work throughout" the adjudicatory period.  *Id.* at 16.

If the ALJ merely found that Nolley's work history suggested that she had the capacity for full-time work, that finding is supported by substantial evidence in the record.  The various jobs that Nolley performed from July 2001 until she stopped working in December 2005 include activities that are inconsistent with her account of debilitating pain.  For example, the last position she held, her July through December 2005 job at a flower shop, required that she walk or stand for an entire shift.  *Id.* at 116-117.  In addition, her work at Fred Meyer from March 2003 through June 2005 required that she walk or stand for five hours, lift up to 60 pounds, and

Page 13 - FINDINGS AND RECOMMENDATION

frequently lift twenty-five pounds. *Id.* at 116, 120. Her earlier jobs at a pharmacy and a health

food store required that she walk for four hours. *Id.* 116, 121-122. Nolley, however, reported

that she could walk for an hour at the most and could lift only five or ten pounds occasionally.

*Id.* 30, 138-139. Thus, although Nolley reported that her jobs at the flower shop and Fred Meyer

exacerbated her pain, *id.* at 27-30, her four-year work history is some evidence that she had the

capacity to do more than she indicated in her testimony.

      If the ALJ found that Nolley actually engaged in full-time work, that finding is not

supported by the record. Nolly worked full time for only a portion of the relevant period. She

reported that she worked forty hours per week in January 2003 and again in November 2003. *Id.*

at 98, 103-104. In addition, Nolley reported that, from 2001 to 2002, she worked at a health food

store for five to six hours per week, for six to eight hours per day. *Id.* at 122. Her wages for that

period, however, suggest that she did not consistently work forty hours per week. *Id.* at 93, 122.

Moreover, for the remainder of the relevant time period, she either did not work at all, or worked

on a part-time basis, as confirmed by her work history and the summary of her wages. *Id.* at 93-

94, 97, 116, 120-121. Thus, the ALJ erred  to the extent that he discounted Nolley's testimony

on the ground that she managed full-time work throughout the adjudicatory period.

### 2.      Personal Care and Household Chores

      The ALJ's credibility determination also relied in part on the report from Nolley's

husband, Steven Nolley, regarding Nolley's daily activities. The ALJ noted that Nolley's

husband reported that she went for walks, assisted with caring for their pets, prepared meals, and

participated in grocery shopping and household chores. *Id.* at 16. The ALJ, however,

overlooked portions of Steven's report. First, Steven indicated that Nolley could walk for only

fifteen to twenty minutes before she had to stop because the "pain gets too high." *Id.* at 159.

Second, he reported that she fed their two cats "once in a while." *Id.* at 155. Third, Steven

reported that Nolley prepared sandwiches and frozen dinners and she that she often dropped

things or burned or cut herself when cooking. *Id.* at 156. Fourth, he reported that Nolley helped

with chores but could not "do too much at once" and that, after doing the chores, she could

"hardly get up and walk for a while." *Id.* at 156. Thus, reading Steven Nolley's report as a

whole, it does not support the ALJ's finding that Nolley engaged in daily activities that were

inconsistent with her pain testimony.

  **D.**  **Conclusion**

  Here, the record supported the ALJ's conclusion that Nolley's intermittent treatment

undermined the credibility of her pain testimony. In addition, the ALJ did not erroneously rely

on the objective medical evidence. The ALJ, however, erred to the extent that he found that

Nolley worked full time throughout the adjudicatory period. In addition, the ALJ erred in his

characterization of the lay witness testimony concerning Nolley's daily activities.

  Where only some of the reasons for rejecting an applicant's credibility are legally

sufficient or supported by the record, but others are not, a court must consider whether the ALJ's

reliance on invalid reasons was harmless error. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d

1190, 1197 (9th Cir. 2004). An error is harmless "so long as there remains substantial evidence

supporting the ALJ's conclusions on credibility and the error does not negate the validity of the

ALJ's ultimate credibility determination." *Carmickle*, 533 F.3d at 1162 (citations omitted). The

relevant inquiry is not whether the ALJ would have made a different decision absent any error,

but rather whether the ALJ's decision remains legally valid. *Id.*

Here, the ALJ's credibility determination is legally valid in spite of his errors.  The ALJ's

opinion is unclear regarding how he decided to treat Nolley's employment history and I therefore

cannot conclude whether his reliance on her work history amounted to error.  I can conclude,

however, that the record supported the ALJ's finding that there was a lack of evidence

documenting persisting or severe symptoms.  Moreover, that finding was relevant to Nolley's

credibility and independent of any factual findings concerning Nolley's work and other activities.

Thus, the ALJ cited a valid, specific and legitimate reason to discount Nolley's testimony,

supported by substantial evidence in the record.  I therefore do not disturb the ALJ's credibility

finding.  *See Carmickle*, 554 F.3d at 1163.

### III.    Lay Witness Testimony

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

ability to work *is* competent evidence."  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996).  Thus, "an ALJ must consider lay witness testimony concerning a claimant's ability to

work."  *Stout*, 454 F.3d at 1053.  The ALJ cannot disregard lay witness testimony "without

comment."  *Van Nguyen*, 100 F.3d at 1467.  Rather, if an ALJ disregards the testimony of a lay

witness, the ALJ must provide a specific reason that is germane to that particular witness.  *Bruce

v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).  Here, Nolley argues that the ALJ rejected the

testimony of her husband, Steven Nolley, without offering a valid reason for doing so.

While the ALJ opinion stated that he accepted Steven Nolley's report as credible (Tr. 16),

the ALJ nonetheless rejected a key portion of his testimony.  When the ALJ found that Nolley

had the capacity to walk or stand for six hours in an eight-hour workday, *id.* at 12, he necessarily

rejected Steven's account that Nolley could walk for only fifteen to twenty minutes before she

Page 16 - FINDINGS AND RECOMMENDATION

had to stop because the "pain gets too high." *Id.* at 159. Thus, the ALJ required a specific, germane reason to reject Steven's report.

The ALJ based his finding that Nolley could stand or walk for up to six hours in an eight-hour workday because her "full time work at the flower shop and Fred Meyer" suggested that she could handle the requirements of light work. *Id.* at 16. To the extent that the ALJ found that Nolley worked full time, that finding is in error because, as discussed above, the record shows that Nolley worked only part time. The ALJ, however, earlier in his opinion stated that Nolley's work activity merely suggested that she had the capacity to work full time and, as discussed above, that finding is not in error. *Id.* at 11. Thus, I cannot determine whether the ALJ misread the evidence.

An ALJ's error is harmless error when it was clear from the record that the error was "inconsequential to the ultimate nondisability determination." *Robbins*, 466 F.3d at 885 (citation omitted). Several courts have held that an ALJ's error in discounting the lay witness testimony was harmless where the ALJ properly discounted the same or similar testimony from the claimant. *See, e.g., Pak v. Astrue*, No. 08-714, 2009 U.S. Dist. LEXIS 60928, at *28-29 (C.D. Cal. July 14, 2009) (ALJ's failure to consider lay witness testimony was harmless because the testimony was cumulative of the claimant's testimony, which the ALJ had properly discredited); *Grissom v. Astrue*, No. 08-500, 2009 U.S. Dist. LEXIS 39697, at *16-17 (C.D. Cal. May 8, 2009) (same). Other courts, however, have held that, even when the ALJ properly discredited the claimant's testimony, the ALJ's error in discounting lay witness testimony was prejudicial because the testimony corroborated the claimant's self-reports. *See, e.g., Hamilton v. Astrue*, No. 08-444, 2009 U.S. Dist. LEXIS 14954, at *17-18 (C.D. Cal. Feb. 4, 2009) (remanding for further

Page 17 - FINDINGS AND RECOMMENDATION

proceedings where the ALJ improperly rejected lay witness testimony that supported the

claimant's testimony regarding her inability to work); *Howard v. Astrue*, No. 07-1523, 2009 U.S.

Dist. LEXIS 11624, at *17-18 (C.D. Cal. Feb. 17, 2009) (same).

Here, assuming the ALJ found that Nolley worked full time and therefore erred in

discounting the lay witness testimony, I cannot conclude that error was harmless.  The ALJ's

reliance on Nolley's work history runs throughout his opinion and was one of the reasons he

discounted Nolley's testimony.  The report from Nolley's husband may have corroborated

Nolley's testimony or could have impacted the ALJ's determination regarding how Nolley's

impairments affected her ability to work.  Specifically, had the ALJ credited the lay witness

testimony that Nolley could only walk for fifteen minutes, then he might have found that Nolley

was only capable of sedentary work, at least for the period of time commencing after Nolley's

last day of employment.  Under the Medical-Vocational Guidelines, an individual is disabled if

he or she can only perform sedentary work, is approaching advanced age and has no transferable

skills.  *See Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995).  Here, at 51 years old, Nolley

met the definition of approaching advanced age, 20 C.F.R. Pt. 404, Subpt. P, app. 2 § 201.00(g),

and, if limited to sedentary work, might be disabled under the guidelines if the record also shows

she lacks transferable skills.  Thus, the error may have impacted the ALJ's ultimate nondisability

determination.

## IV.    Remand

The district court should credit evidence that the ALJ improperly rejected during the

administrative process and remand for an award of benefits if: (1) the ALJ failed to provide

legally sufficient reasons for rejecting the evidence; (2) no outstanding issues remain for the ALJ

to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke*, 379 F.3d at 593 (citation omitted). Here, an outstanding issue remains. The ALJ may have improperly rejected the lay witness testimony by mistakenly concluding that Nolley had worked full time. Moreover, because the record does not establish whether Nolley had transferable job skills, it is not clear whether the ALJ would have found Nolley disabled had he fully credited the lay witness testimony and limited Nolley to sedentary work. I therefore conclude that a remand for further proceedings is appropriate. On remand, if the ALJ rejects the lay witness testimony, he must clearly state his reasons for doing so, and those reasons cannot include the mistaken finding that Nolley worked full time at Fred Meyer and the flower shop. If the ALJ credits the lay witness testimony, the ALJ must determine whether Nolley has transferable skills, or whether she is disabled under the Medical Vocational Guidelines.

## CONCLUSION

For the reasons set forth above, this case should be remanded to the Social Security Administration for reconsideration of Nolley's disability status.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 19 - FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 28, 2009.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


Dated this 14th day of August, 2009.

                              ___/s/ Paul Papak_____
                              Honorable Paul Papak
                              United States Magistrate Judge

Page 20 - FINDINGS AND RECOMMENDATION